Adam M. Slater
Matthew R. Mendelsohn
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

*Attorneys for Plaintiffs and Putative Class*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA OVERTON and MERRIBETH BAZZELL, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>SANOFI-AVENTIS U.S., LLC d/b/a SANOFI US<br><br>Defendant. | Civ. Ac. No.:<br><br><br>**CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND** |

1. Plaintiffs Lisa Overton and Merribeth Bazzell ("Plaintiffs") bring this action individually and on behalf of all current or former employees of Sanofi-Aventis U.S., LLC ("Sanofi" or "Defendant") who were eligible to receive commissions, bonuses, payments, benefits, or other compensation ("compensation") related to the sales of Zaltrap® in the third and fourth quarters of 2012 ("Class Period"). The Plaintiffs and members of the putative class are collectively referred to herein as "Class Members."

## PARTIES

### Plaintiffs

2. Plaintiff, Lisa Overton is a Virginia citizen who resides in Glen Allen, Virginia. At all relevant times Ms. Overton was employed by Sanofi as an Oncology Key

Account Lead for the Washington D.C. sales territory.

3. Plaintiff, Merribeth Bazzell is a Louisiana citizen who resides in Mandeville, Louisiana. At all relevant times Ms. Bazzell was employed by Sanofi as Senior Clinical Product Specialist, Oncology, for the New Orleans territory.

**The Defendant**

4. Sanofi-Aventis U.S., LLC is a Delaware limited liability corporation doing business as Sanofi US. Sanofi maintains its headquarters and principal place of business at 55 Corporate Drive, Bridgewater, New Jersey. At all times relevant herein, Sanofi was engaged in research, development, manufacturing, marketing and sales of a variety of pharmaceutical and healthcare products in New Jersey and throughout the United States of America.

**FACTUAL ALLEGATIONS**

5. According to Sanofi, Zaltrap® was developed and intended to "be used in combination with the chemotherapy regimen 5-fluorouracil, leucovorin, and irenotecan-(FOLFIRI) to treat metastatic colorectal cancer that has progressed during or after treatment with other anti-cancer medicines."

6. Plaintiffs and Class Members were employed by Sanofi to, among other things, promote and sell Zaltrap®, which was being launched in the United States in or about August 2012.

7. One aspect of the compensation structure for the Class Members was the Sanofi Incentive Compensation Plan Policy.

8. The specific compensation structure for the sales of Zaltrap® was communicated to Class Members by their respective district managers on or about August

31, 2012. This included the "uncapped pay-per-vial" incentive. Pursuant to this provision, each Class Member would be paid compensation based upon the number of vials of Zaltrap® they sold, with the per vial commissions established at the outset. This compensation was presented as, and served as, a significant incentive to the Class Members.

9. The uncapped per vial compensation structure was further confirmed, including during the Zaltrap® launch meeting for the week of September 10, 2012.

10. On or about September 13, 2012, the specific per vial compensation rates for the district and territory levels were communicated to Class Members by their District Managers. The per vial compensation rate was based at least in part on the market potential for that Class Member's particular territory. On information and belief, compensation to Class Members including District Managers and/or other supervisors was also to be based at least in part on the per vial commission amounts.

11. Following the inception of the sale of Zaltrap®, Sanofi management continued to confirm that the compensation would include an uncapped pay-per-vial commission.

12. On information and belief, from the outset, Sanofi's internal sales data demonstrated that the Class Members successfully sold Zaltrap®, exceeding the forecasted sales volumes. Sanofi management confirmed throughout this and all relevant periods that compensation would be paid as represented and agreed.

13. On or about November 6, 2012, an internal conference call was held with the management team overseeing Zaltrap®. On that call, it was announced that Sanofi had decided to discount Zaltrap by 50% to the prescriber (not the patient) and explained that the discount was being provided to increase patient access to the product. During that call, Sanofi management confirmed that there would be no changes to the uncapped pay-per-vial

commissions and this assurance was conveyed to the Class Members.

14. On November 6, 2012, Plaintiffs and Class Members received an email directly from Paul Hawthorne, who was the Head of Oncology PCU (Patient Centered Unit) confirming that Sanofi was reducing the amount charged for Zaltrap. Mr. Hawthorne indicated that Sanofi decided to take "immediate action across the oncology community to reduce the cost of therapy and to remove barriers to access for any patient who may benefit from Zaltrap." Mr. Hawthorne went on to praise the entire Zaltrap sales team for their successful product launch:

> "You should all be very proud of the impact you have had on the lives of metastatic colorectal cancer patients and their families. Since we introduced Zaltrap in late August, we have seen strong sales and uptake in the marketplace, which is a tribute to this entire team."

15. In January 2013, at least one regional manager contacted Rick Schirmer, who was the Vice President of Oncology Sales, to again confirm that the full compensation for Zaltrap® would be paid for the July 2012 through December 2012 time period. Mr. Schirmer confirmed that the compensation would be paid in full. That information was then disseminated to Class Members.

16. From January 2013 to mid-March 2013, Mr. Schirmer repeatedly confirmed that Sanofi would abide by its agreement and pay the full compensation due. Plaintiffs and Class Members relied upon these representations and expected to be paid their full compensation on or about March 22, 2013.

17. On March 20, 2013 a mandatory conference call was scheduled for the following day. During that call on March 21, 2013, Class Members were advised that Sanofi was not going to pay the full amount of compensation owed. No legitimate basis was presented for this decision.

18. As a result of Sanofi's decision, Class Members have been deprived of compensation and damaged.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d)(2) and (6) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendant Sanofi has its North American headquarters in this jurisdiction, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district. Additionally, the development of the compensation structure, the determination of the per vial commission rates, the repeated communications and promises regarding the compensation, and Sanofi's final decision to breach the agreement and not pay the full compensation, were all actions occurring in, created in and orchestrated from Sanofi's New Jersey headquarters. As a result, the conduct causing injury to the plaintiffs and Class Members occurred and emanated from New Jersey.

21. This Court has personal jurisdiction over Sanofi. Defendant's North American corporate headquarters is located in Bridgewater, New Jersey. As such, Defendant has conducted substantial business in this judicial district, and intentionally and purposefully placed its products into the stream of commerce within New Jersey and throughout the United States.

## CLASS ACTION ALLEGATIONS

22. Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Plaintiff Class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) and/or (b)(3).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

23. The Class is defined as all current or former employees of Sanofi-Aventis U.S., LLC who were eligible to receive commissions, bonuses, payments, benefits or other compensation ("compensation") related to the sales of Zaltrap® in the third and fourth quarters of 2012.

24. Excluded from the Class are (1) Sanofi's legal representatives, officers, directors, assigns, and successors, and (2) the Judge to whom this case is assigned and the Judge's staff.  Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

25. <u>Numerosity</u>:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  Plaintiffs estimate that there are in excess of 200 Class Members. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Members of the Class are readily identifiable from employment information and records in Defendant's possession, custody, or control.

26. <u>Typicality</u>:   The claims of the representative plaintiffs are typical of the claims of the Class in that the representative plaintiffs, like all Class Members, were eligible

to receive compensation for and based upon the sales of Zaltrap® in the third and fourth quarters of 2012. The plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that their Zaltrap® compensation was improperly reduced, and not paid.

27. <u>Commonality</u>: There are numerous questions of law and fact common to plaintiffs and the Class which predominate over any questions affecting only individual Class Members. These common legal and factual issues include but are not limited to the following:

 a. Whether a contract or agreement was formed when Sanofi agreed to pay the Class Members Zaltrap® compensation.

 b. Whether that contract or agreement was breached when Sanofi unilaterally reduced the compensation owed to Class Members.

 c. Whether Sanofi's actions violated is duty of good faith and fair dealing owed to plaintiffs and Class Members;

 d. Whether Sanofi was legally obligated to pay the full amount of the compensation to the Class Members;

 e. Whether Sanofi has been unjustly enriched as a result of their improper conduct.

 f. Whether Sanofi's unilateral reduction of the compensation owed constitutes a violation of New Jersey's Wage Payment Law, N.J.S.A. 34:11-4.1-4.14.

28. <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs have retained attorneys experienced in the prosecution of class actions, and Plaintiffs intend to prosecute this action vigorously.

29. <u>Predominance and Superiority</u>: Plaintiffs and the other Class Members have all suffered and will continue to suffer harm and damages as a result of Sanofi's wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely

find the cost of litigating their claims on an individual basis prohibitively high and would therefore have no effective remedy at law. Absent a class action, Class Members will be left without remedy. Class treatment of common questions of law and fact would also be the superior method as compared to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE NEW JERSEY
### WAGE PAYMENT LAW, N.J.S.A 34:11-4.1 - 4.14

30. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

31. N.J.S.A. 34:11-4.6(b) of New Jersey's Wage Payment Law provides that "[e]very employer shall … [n]otify his employees of any changes in the pay rates … prior to the time of such changes."

32. N.J.S.A. 34:11-4.1(c) defines "wages" subject to this provision as including "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a … commission basis."

33. Accordingly, the Wage Payment Law required Sanofi to give advance notice to plaintiffs and Class Members of any change in the method by which his or her compensation was calculated, before putting the change into effect.

34. In violation of the Wage Payment Law, Sanofi retroactively changed the agreed-upon uncapped pay-per-vial commission structure the day before compensation checks were owed and almost three months after the conclusion of the pay period for this compensation was earned.

35. Sanofi's retroactive reduction of the compensation did not provide Class Members with the advance notice required, thereby violating the Wage Payment Law.

36. As a result of Sanofi's violation of the Wage Payment Law, Class Members have been damaged in that their compensation was improperly reduced.

## COUNT II
## BREACH OF CONTRACT

37. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

38. Plaintiffs and Class Members entered into a contract with Sanofi when they agreed to sell Zaltrap®, and to be paid the promised compensation, including an uncapped pay-per-vial commission rate.

39. Plaintiffs and Class Members fully performed their contractual duties. In fact, Sanofi lauded plaintiffs and Class Members for shattering sales expectations and being instrumental to Zaltrap's® successful product launch.

40. Despite Class Members' full performance under the contract, Sanofi breached the contract when it unilaterally and without any justification reduced the compensation.

41. As a result of Sanofi's breach of contract, plaintiffs and Class Members have suffered economic injury and damages.

## COUNT III
## BREACH OF THE DUTY OF GOOD FAITH
## AND FAIR DEALING

42. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

43. The contract and agreement herein includes an implied covenant of good faith and fair dealing.

44. Defendant breached the covenant of good faith and fair dealing by, *inter alia*, promising to pay plaintiffs and Class Members an uncapped pay-per-vial commission and then unilaterally reducing the compensation with no legitimate basis.

45. Defendant further breached the covenant of good faith and fair dealing by changing the commission rates after the compensation had been earned and only one day before the compensation was to be paid.

46. Defendant breached the duty of good faith and fair dealing by misrepresenting the commissions to be paid, and then without warning or basis, reducing and failing to pay the full compensation.

47. Defendants acted in bad faith and/or with a malicious motive to deny plaintiffs and Class Members the benefit of the bargain, thereby causing Class Members damages.

## COUNT IV
## UNJUST ENRICHMENT

48. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

49. Sanofi has been unjustly enriched by reducing and thus withholding compensation that was owed to Class Members.

50. As a result of Sanofi's unjust enrichment, Class Members have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully request that this Court grant the following relief:

    a. An Order certifying the proposed Class, designating plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

    b.    An Order that Defendant is financially responsible for notifying all Class Members about the certification of this class action;

    c.    An Order enjoining Defendant from further improper calculation and payment of compensation;

    d.    An award to Plaintiffs and the Class for compensatory, exemplary, statutory damages, treble and punitive damages, including pre-judgment and post-judgment interest;

    e.    Any and all remedies provided pursuant to the New Jersey Wage Payment Law, N.J.S.A 34:11-4.1 - 4.14;

    f.    An Order that defendant must disgorge, for the benefit of the Class, the ill-gotten profits it received from withheld compensation, and make full payment and restitution to Plaintiffs and Class Members;

    g.    An award of attorneys' fees and costs, as provided by law;

    h.    An award of pre-judgment and post-judgment interest, as provided by law;

    i.    Such other legal and equitable relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims and issues so triable.

Dated:  September 17, 2013

    By:    /s/*Adam M. Slater*
    Adam M. Slater
    Matthew Mendelsohn
    **MAZIE SLATER KATZ & FREEMAN, LLC**
    103 Eisenhower Parkway
    Roseland, New Jersey 07068
    Telephone:  (973) 228-9898
    aslater@mskf.net
    mmendelsohn@mskf.net

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby further certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

                                      **MAZIE SLATER KATZ & FREEMAN, LLC**
                                      Attorneys for Plaintiffs

                                      /s/*Adam M. Slater*
                                      ADAM M. SLATER

Dated:  September 17, 2013