## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LISA OVERTON, MERRIBETH BAZZELL, and KAREN FULLER individually, and on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>  v.<br><br>SANOFI-AVENTIS U.S., LLC d/b/a SANOFI US,<br><br>        Defendant. | Civ. Ac. No.: 3:13-cv-05535-PGS-DEA |

_____

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF SETTLEMENT, AWARD OF INCENTIVE PAYMENTS AND
AWARD OF ATTORNEYS' FEES AND COSTS**
_____


**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
Telephone: (973) 228-9898
Facsimile: (973) 228-0303

*Of Counsel and On the Brief:*

Adam M. Slater
Matthew R. Mendelsohn

## TABLE OF CONTENTS

Page No.

STATEMENT OF FACTS ..................................................................................1

LEGAL ARGUMENT.......................................................................................3

POINT I

THE SETTLEMENT CLASS SHOULD BE CERTIFIED.............................................3

POINT II

THE PROPOSED SETTLEMENT IS FAIR, REASONABLE
AND ADEQUAE AND MERITS COURT APPROVAL.................................................10

POINT III

TRANSMISSIONS OF THE NOTICE OF SETTLEMENT TO
THE CLASS SATISFIED BOTH THE COURT'S PRELIMINARY
ORDER AND APPLICABLE LAW ...............................................................................19

POINT IV

THE INCENTIVE AWARDS SHOULD BE APPROVED............................................21

POINT V

THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD
BE APPROVED ......................................................................................................22

CONCLUSION.......................................................................................................22

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Page No.**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1998) ...............................................passim

*Baby Neal v. Casey*, 43 F.3d 48 (1994) ...............................................................4,5

*Careccio v. BMW of N. Am., LLC*, 2010 WL 1752347 (D.N.J. 2010)...................................16

*Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201 (E.D. Pa. 2011)............................15

*Chiang v. Veneman*, 385 F.3d 256 (3d. Cir. 2004) ...................................................5

*DeJulius v. New Eng. Health Care Emples. Pension Fund*,
429 F.3d 935 (10ᵗʰ Cir. 2005) ........................................................................20

*DeSantis v. Snap-on Tools Co.*, No. Civ. A. 06CV2231 (DMC),
2006 WL 3068584 (D.N.J. Oct. 27, 2006)............................................................21

*Ehrheart v. Verizon Wireless,* 609 F.3d 590 (3d Cir. 2010)........................................10

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)...................................................8

*Georgine v. Amchem Product, Inc.*, 83 F.3d 610 (3d Cir. 1996)....................................5.6

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)....................................................passim

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001)..........................................passim

*In re Community Bank of N. Va.*, 418 F.3d 277 (3d Cir. 2005)........................................4

*In re Corel Corp. Sec. Litig.*, 293 F.Supp. 2d 484 (E.D. Pa. 2003)..................................16

*In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196 (E.D. Pa. 2008) ..........................................7

*In re Elec. Carbon Prods. Antitrust Litig.,* 447 F.Supp. 2d 389 (D.N.J. 2006)...................passim

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995)........................................................................passim

*In re Ins. Brokerage Antitrust Litig.*, Civ. No. 04–5184, 2007 WL 542227
 (D.N.J. Feb. 16, 2007)...............................................................................7

*In re Integra Realty Res., Inc.*, 262 F.3d 1089 (10th Cir. 2001)...........................................20

*In re Mercedes-Benz Antitrust Litigation*, 213 F.R.D. 180 (D.N.J. 2003)............................7

*In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010)...........................................7

*In re Prudential Ins. Co. of Am. Sales Practices Litig.,*
962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)...................................passim

*In re Remeron,* 2005 WL 2230314 (D.N.J. Sep. 13, 2005) ...................................................8,9

*In re School Asbestos Litig.,* 921 F.2d 1330 (3d Cir. 1986) .................................................3

*In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004)...................................passim

*McCoy v. Health Net, Inc.*, 569 F.Supp. 2d 448 (D.N.J. 2008) ..............................................11

*Mullane v. Cent. Hanover Bank & Trust co.*, 339 U.S. 306 (1950)........................................20

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ........................................................9

*Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994)....................................................................20

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001)................................................................4

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) ................................................13

*Sullivan v. D.B. Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ..........................................8

*Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207
(D.N.J. 2005)........................................................................................................................3,21

*Weiss v. Mercedes-Benz of N. Am.*, 899 F. Supp. 1297 (D.N.J. 1995) .................................10,14,15

**RULES**:

Fed. R. Civ. P. 23.................................................................................................................passim

## STATEMENT OF FACTS

On October 7, 2015, the Court preliminarily approved a settlement in this class action lawsuit brought by Plaintiffs Lisa Overton, Merribeth Bazzell and Karen Fuller (hereinafter, "Plaintiffs") on behalf of themselves and other similarly situated current and former employees of sanofi-aventis US LLC ("sanofi").[1]  On December 1, 2015 the Court amended its October 6, 2015 Order and rescheduled the final approval hearing for February 8, 2016.

Plaintiffs have alleged that sanofi breached certain obligations to class members by unilaterally reducing incentive compensation payouts associated with sales of Zaltrap® during the second half of 2012.  Plaintiffs allege that such reductions were improper and contrary to representations made by sanofi.  Based on these allegations, Plaintiffs asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment and violation of the New Jersey Wage Payment and Collection Law. Defendants have denied – and continue to deny – these allegations as a matter of both fact and law.  Nonetheless, for the reasons set forth in the accompanying certifications, and previously discussed in Plaintiffs' motion for preliminary approval of the settlement and, as necessary, at the Fairness Hearing, the parties have entered into a comprehensive settlement agreement, which fairly and adequately resolves the matters in issue.

This settlement was reached almost two years after this action was filed, during which time the parties engaged in extensive motion practice and the exchange of discovery, including documents and data.  The parties also engaged in several rounds of settlement discussions, including a formal mediation with the Honorable Diane M. Welsh, U.S.M.J. (ret.) of JAMS.

---

[1] The Settlement Agreement and Second Addendum to the Settlement Agreement are attached as Exhibits "A" and "C" respectively to the accompanying Certification of Adam M. Slater ("Slater Cert.").  All capitalized terms used in this motion that are not specifically defined herein, are defined in the Settlement Agreement.

This process provided the parties with the information needed to craft an appropriate, fair and adequate resolution of this case. The Court is fully familiar with this process, which was at all times conducted under close judicial supervision and guidance.

The proposed Class is defined in Section II(A)(1) of the Settlement Agreement:

> All current and former employees of sanofi who were eligible to receive incentive compensation awards under sanofi's incentive compensation program, including, but not limited to, alleged commissions, bonuses, incentives, payments, benefits, or other compensation, related to the sales of Zaltrap® in 2012 and who experienced a downward adjustment of such compensation in conjunction with sanofi's incentive compensation payments for 2012 Zaltrap® sales in the spring of 2013. The Class excludes all persons who executed a release of the claims asserted in the Action prior to the date of this Agreement.

The proposed settlement also provides that sanofi shall pay or cause to be paid a gross total sum not to exceed Two Million Five Hundred Eighteen Thousand Six Hundred One Dollars and Fifty Six Cents ($2,518,601.56) (the "Settlement Amount"), which amount shall cover all Settlement Costs and all amounts to be paid to Settlement Class Members. Defendants will not be required, under any circumstance, to pay more than the gross total Settlement Amount of Two Million Five Hundred Eighteen Thousand Six Hundred One Dollars and Fifty Six Cents ($2,518,601.56), with the express exception that if settlement administration costs exceed $10,000.00, Defendants will be solely responsible for payment of the costs in excess of $10,000.00. Plaintiffs' attorney fees and costs, service awards to the Plaintiffs and up to $10,000 in administration costs will be deducted from the Settlement Amount, resulting in a Net Settlement Fund that will be distributed to the Class as explained in more detail below.

It is respectfully submitted that this settlement should be granted final approval, the Class certified, incentive payments to the Plaintiffs awarded and Class Counsel's requested attorneys' fees and costs approved.

2

## LEGAL ARGUMENT

## POINT I

## THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiffs respectfully request that a class be certified for settlement purposes pursuant to FED. R. CIV. P. 23(b)(3).  This Court previously granted preliminary certification of the Settlement Class by Order dated October 7, 2015, and Plaintiffs and Class Counsel now seek final approval and certification.  *See generally Varacallo v. Massachusetts Mut. Life Ins. Co*., 226 F.R.D. 207, 228-35 (D.N.J. 2005).  For the reasons set forth below, final approval should be granted.

### A.  The Law Favors Settlement of Complex Class Actions

The law clearly favors settlement of complex class actions such as this case.  "There is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. 2004); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 785 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re School Asbestos Litig.,* 921 F.2d 1330, 1333 (3d Cir. 1986) (noting the Third Circuit's policy of "encouraging settlement of complex litigation that otherwise could linger for years").

### B.  Class Certification Should be Granted for Settlement Purposes Under Rule 23

Class certification under Rule 23 has two primary components.  First, the party seeking class certification must establish the four requirements of Rule 23(a):  "(1) numerosity ('a class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of

the class'); and (4) adequate representation (representatives 'will fairly and adequately protect the interests of the class')."  *In re Warfarin Sodium*, 391 F.3d at 527; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1998).  Second, the Court must find that the class fits within one of the three categories of class actions set forth in FED R. CIV. P. 23(b).  *In re Community Bank of N. Va.*, 418 F.3d 277, 302 (3d Cir. 2005).

## 1. The Proposed Class Satisfies the Criteria of Rule 23(a)

### a) Numerosity

"To meet the numerosity requirement, class representatives must demonstrate only that common sense suggests that it would be difficult or inconvenient to join all Class Members."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *see also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001) (numerosity requirement satisfied "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40").

Here, the proposed Settlement Class includes one hundred and twenty six   class members.  *See* Declaration of Brian S. Devery attached as Exhibit "D" to the Slater Cert. Numerosity is easily met.

### b) Commonality

To satisfy the commonality requirement under Rule 23(a)(2), plaintiffs must demonstrate that "at least one question of fact or law is common to each member of [the] prospective class." *Stewart v. Abraham*, 275 F.3d at 227.   Class members do not have to share identical claims or claims arising from the same operative facts.  *See, In re Prudential Ins.*, 148 F.3d at 310; *Baby Neal v. Casey*, 43 F.3d 48, 57 (1994) (Factual differences in the claims of class members do not defeat certification).  The commonality standard of Rule 23(a)(2) is not a high bar; it will be

4

satisfied if the named plaintiffs share at least one question of law or fact with the class. *Chiang v. Veneman*, 385 F.3d 256, 265 (3d. Cir. 2004).

Here, every member of the class was affected by the same alleged improper conduct by Defendant.  Accordingly, there are several questions of law and fact common to the Settlement Class.  Among these questions are: (1) whether a contract or agreement was formed when sanofi agreed to pay the Class Members Zaltrap® compensation; (2) whether that contract or agreement was breached when Sanofi unilaterally reduced and failed to pay the compensation promised to Class Members; (3) whether Sanofi's actions violated its duty of good faith and fair dealing owed to plaintiffs and Class Members; (4) whether Sanofi was legally obligated to pay the full amount of the compensation to the Class Members; and (5) whether Sanofi has been unjustly enriched as a result of their improper conduct.  These common questions of law and fact clearly satisfy the Rule 23(a) test for commonality.

### c)    Typicality

In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. *See, Georgine v. Amchem Product, Inc.*, 83 F.3d 610, 631 (3d Cir. 1996).  Typicality seeks to ensure that there are no conflicts between the class representatives' claims and the claims of the class members that the, "named plaintiffs have incentives that align with those of absent class members." *Baby Neal v. Casey*, 43 F.3d at 57.

The claims of the Representative Plaintiffs are the very same claims held by every member of the Class.  The Representative Plaintiffs, like every member of the Class, claims that their incentive compensation was improperly reduced by sanofi and therefore have sustained monetary damages.  Accordingly, the typicality requirement of Rule 23(a) is clearly met.

d)   **Adequacy**

The adequacy element is met because the representative plaintiffs and Class Counsel have "fairly and adequately protect[ed] the interests of the class." *In re Warfarin*, 391 F.3d at 532. The adequacy inquiry "has two components designed to ensure that absentees' interests are fully pursued." *Id.* (quoting *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996)). First, the Court must assess whether the named plaintiffs' counsel will adequately represent the class. *In re Warfarin Sodium*, 391 F.3d at 532; *In re Gen. Motors*, 55 F.3d at 800. To this end, courts consider whether the plaintiffs' counsel is qualified, experienced, and able to conduct the litigation. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 312 (3rd Cir. 1998). Then, the Court must evaluate "conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium*, 391 F.3d at 532.

First, Class Counsel are qualified, experienced, and able to "adequately represent the class." In consultation with the representative plaintiffs, Class Counsel worked diligently and vigorously to pursue the Class Members' claims in order to maximize the recovery, as well as to negotiate and obtain the settlement presented on this application. (*See, e.g.* Slater Cert.) Class Counsel conducted extensive discovery and investigated public and non-public sources of information relating to the claims and the underlying events alleged in the Complaint, including witness interviews; reviewed and analyzed the evidence adduced during discovery; researched the applicable law with respect to the claims alleged and the potential defenses thereto; undertook extensive arms-length settlement negotiations; devised a plan to allocate the benefits of the Settlement that will ensure that all Settlement Class Members are treated fairly and reasonably; appropriately memorialized the agreements reached with Sanofi in the Settlement Agreement; and accurately summarized the Settlement and its components in the Notices

presented to the Court for transmittal to all potential Settlement Class Members.   (*Id*.) The aforementioned work provides sufficient examples of counsel's contributions in this case.

Second, the representative plaintiffs are clearly "part of the class and possess the same interest and suffer[ed] the same injury as the class members," and there is no conflict of interest. *See Amchem*, 521 U.S. at 625–26.   "It is not enough for objectors to point to differences in claims, allocation amounts, or state laws without identifying how such differences demonstrate a conflict of interest."   *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010). Moreover, a conflict of interest will not be sufficient to defeat class certification "unless [that] conflict is apparent, imminent, and on an issue at the very heart of the suit."   *Dewey*, 728 F. Supp. 2d at 567 (quoting *In re Ins. Brokerage Antitrust Litig*., Civ. No. 04–5184, 2007 WL 542227, at *15 (D.N.J. Feb. 16, 2007)).   The adequacy element is clearly satisfied.

### 2.     The Proposed Settlement Class Satisfies the Criteria of Rule 23(b)

#### a)     The Settlement Class Satisfies the Predominance Requirement

"Predominance measures whether the class is sufficiently cohesive to warrant certification."   *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 207 (E.D. Pa. 2008); *Amchem*, 521 U.S. at 623.   Because the commonality prong of Rule 23(a) overlaps with the predominance requirement of 23(b)(3), courts frequently examine the two requirements together. "Predominance requires more than that common issues exist.   Predominance requires that the common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members."   *In re Mercedes-Benz Antitrust Litigation*, 213 F.R.D. 180, 186 (D.N.J. 2003) (internal citations omitted).   As set forth above, the commonality requirement under 23(a)(2) is satisfied here.   While predominance requires that common questions outweigh individual questions, *see Johnston,* 265 F.3d at 185, the existence of individual questions of fact

7

does not per se preclude class certification. *In re Remeron,* 2005 WL 2230314, *11 (D.N.J. Sep. 13, 2005) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir. 1985)).

Here, for purposes of settlement, the parties are in agreement that the predominance test is plainly met. The proposed settlement makes relief available to every member of the Class based on facts that apply equally to all class members, based on easily ascertainable criteria, bypassing whatever individual evidentiary and factual issues could arise in determining liability or damages in litigation. As a result, with respect to the proposed Settlement, common questions of law and fact predominate over any individual issues that might have arisen in this Action had it been litigated rather than settled.

**b)** **The Settlement Class Satisfies the Superiority Requirement**

The superiority requirement has also been met. When considering a proposed settlement class for purposes of superiority, the court "need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." *Amchem*, 521 U.S. at 710; *see also Sullivan v. D.B. Investments, Inc.*, 667 F.3d 273, 303 (3d Cir. 2011). Outside of the settlement context, however, the superiority prong of Rule 23(b)(3) would have required this Court to assess, among other issues, potential challenges in the manageability of the Plaintiffs' proposed class action at trial. Fed. R. Civ. P. 23(b)(3)(D); *see also In re Warfarin*, 391 F.3d 516 (2004) (noting that Rule 23(b)(3) requires courts to consider manageability outside of the settlement context).

Absent the proposed settlement, Defendant would have argued that there are numerous potential manageability problems at trial, which would preclude class certification. Plaintiffs would argue in contrast that it would be far more costly for each putative class member to separately litigate this complex case by individually handling the discovery, depositions, and

expert analyses needed to effectively prosecute the action.

Furthermore, Plaintiffs would argue that while the aggregate damages in this case are substantial, the amount of money at stake for many of the Class Members may be too small to warrant individual actions, particularly given the complexity of proof in this matter; failure to certify may effectively present a barrier to relief for much or all of the class.  *See, e.g., Amchem*, 521 U.S. 591 at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (pooling plaintiffs' claims in a class action is the only way for plaintiffs to have their day in court when it would be uneconomical to bring suit individually); *In re Remeron,* 2005 WL 2230314, *12 (D.N.J. Sep. 13, 2005) (noting that a class action is considered superior where individual class members have little interest in individually controlling the prosecution or defense of separate actions because each putative class member has a very small claim in relation to the cost of prosecuting a lawsuit).  Here, the risk to Plaintiffs' ability to advance class claims in a trial amply support the reasonableness of the proposed settlement in this action.

Further, in contrast to the inefficiency of duplicative individual lawsuits, resolving all plaintiffs' claims in a single proceeding allows for substantial economies of time, effort and expense for the litigants as well as the Court.  *In re Remeron,* 2005 WL 2230314 at *12 (citations omitted).  Further, allowing this class settlement to go forward will avoid potentially duplicative litigation, potentially inconsistent rulings, and save judicial resources. *Id.*

Individual Class Members have not demonstrated to this point an interest in controlling this action.  Moreover, despite substantial damages, Plaintiffs are unaware of any individual actions having been filed, likely due to the high cost to pursue such a claim.  It is unlikely that

9

any individual Class Member would pursue an individual claim or achieve any recovery in the absence of this comprehensive action.  Clearly, settling this matter as a class action is superior to the alternatives.

In sum, the settlement should be given final approval because it meets all of the requirements of FED. R. CIV. P. 23 for numerosity, commonality, typicality, adequacy, predominance, and superiority.

## POINT II

## THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND MERITS COURT APPROVAL

It is well accepted that "the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors*, 55 F.3d at 784.  Indeed, as noted by the court in *Dewey*:

> In *Weiss v. Mercedes–Benz of N. Am.*, 899 F. Supp. 1297, 1300 (D.N.J. 1995), former Chief Judge John W. Bissell observed that this policy is further supported by the advantages to the parties of a settlement as they "have far greater control of their destiny than when a matter is submitted to a jury" and reflects the consideration that "the time and expense that precedes the taking of such a risk can be staggering."  The Court of Appeals reiterated these benefits in *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010), in which it stated that settlements conserve judicial resources and enable the parties to avoid the costs and risks of a complex trial.

*Dewey*, 728 F. Supp. 2d at 571 (reversed on other grounds).

Here, Plaintiffs request that the settlement be finally approved because it is, by any measure, "fair, reasonable and adequate."  *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 398 (D.N.J. 2006) (citing *In re Gen. Motors,* 55 F.3d at 785).

**A.**     **The presumption of fairness in *In re Warfarin Sodium***

There is "an initial presumption of fairness when reviewing a proposed settlement where: '(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'"  *In re Warfarin Sodium*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig*., 264 F.3d 201, 232, n. 18 (3d Cir. 2001)).   Such a presumption applies here.

First, settlement negotiations were conducted at arm's length, through the auspices of a seasoned mediator, who is a retired Federal Judge.  *See* Slater Cert. at ¶¶ 8-10.  Additionally, the parties had no discussion about attorneys' fees or incentive awards until after the terms of the settlement had been agreed to, and only then with the assistance of Judge Welsh.  *Id*. at ¶¶ 14-15.  Second, there was sufficient discovery, both formal and informal *Id*. at ¶¶4-7. Third, the "proponents of the settlement" are all "well-seasoned attorneys" and "capable litigators," with extensive expertise in class action and product liability litigation.  **Finally, out of one hundred and twenty six Class Members, not a single one has objected or opted out of the settlement**.  *Id*. at ¶ 23.

Plainly, each of the factors set forth in *In re Warfarin Sodium* have been met. Accordingly, the Court should find that there is an initial presumption of fairness to the settlement. *See*, *e.g.*, *McCoy v. Health Net, Inc.*, 569 F. Supp.2d 448, 459 (D.N.J. 2008).

**B.**     **The *Girsh* Factors**

In *Girsh v. Jepson*, the Third Circuit noted that "[t]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court."   521 F.2d 153, 156 (3d Cir. 1975).  The court went on to identify the following "factors which are relevant to a determination of the fairness of a settlement:

1.  the complexity, expense and likely duration of the litigation;

2.  the reaction of the class to the settlement;

3.  the stage of the proceedings and the amount of discovery completed;

4.  the risks of establishing liability;

5.  the risks of establishing damages;

6.  the risks of maintaining the class action through the trial;

7.  the ability of the defendants to withstand a greater judgment;

8.  the range of reasonableness of the settlement fund in light of the best possible recovery; and

9.  the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 156-57.  In this case, these factors weigh in favor of approval of the settlement.

### 1)      Complexity, Expense and Likely Duration of the Litigation

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation."  *In re Cendant Corp.*, 264 F.3d at 233 (quoting *In re Gen. Motors*, 55 F.3d at 813). "By measuring the costs of continuing on the adversarial path, a court can gauge the benefit of settling the claim adequately."  *In re Gen. Motors*, 55 F.3d at 812.

This factor weighs strongly in favor of settlement as this case presented numerous complex factual, legal, and procedural issues and, but for the settlement, would necessarily entail a further lengthy and costly litigation.  This class action involves Class Members from numerous different states, with varying job titles and responsibilities.   Slater Cert. at ¶ 4.  Class Counsel have also responded to, and largely survived, Sanofi's motions to dismiss the claims asserted. Sanofi continues to strenuously deny the merits of Plaintiffs' claims and continues to maintain that the class could not be certified in a contested class certification context.

Because of the complexity of the case, it took countless discussions and an in-person, full-day mediation session with Judge Welsh to reach a settlement. *Id*. at ¶ 10.  Class Counsel have spent more than 500 hours of attorney time and $6,800 in out of pocket expenses to

prosecute this action (*See* Doc. No 50-2.) and if the case had not settled those figures would have multiplied due to the need to continue fact discovery and depositions, obtain and serve expert reports, take expert depositions, and try the case. The trial would have likely lasted at least a month due to the volume of documents, the number of fact and expert witnesses, and the complexity of the issues that would have been presented. Thus, there would have been significant expenditures of time and money if the case had not settled. The efficiency of settling at this stage cannot be overstated.

As in *In re Elec. Carbon Prods.*, "in the absence of settlement here, complex legal and factual issues would remain to be litigated and adjudicated." 447 F. Supp. 2d at 39. Additionally, "[m]otion practice – both dispositive and non-dispositive – in these contested cases would also likely be time-consuming and tedious, given the range of possible issues to be raised," followed by more complex work leading to trial, "with appeals by the losing side being likely and adding additional cost and delay before finality can be achieved." *Id*. Because of all of this, the first *Girsh* factor weighs heavily in favor of settlement.

### 2) <u>The Reaction of the Class to the Settlement</u>

The second *Girsh* factor "attempts to gauge whether members of the Class support the settlement." *In re Prudential*, 148 F.3d at 318. As noted above, there are one hundred and twenty six Class Members, and no class member has objected or opted out of the settlement. *See* Slater Cert. at ¶23. The fact that not a single class member raised any concerns about the settlement should weigh "strongly" in favor of approving the settlement. *See Id.*; *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) ("only" 29 objections in 281 member class "strongly favors settlement"); *In re Cendant Corp.*, 264 F.3d at 235 (class reaction "weighed strongly in favor of the Settlement" given "vast disparity between the number of

potential class members who received notice of the Settlement and the number of objectors"); *Weiss,* 899 F. Supp. at 1301 (a small percentage of objections allows an inference that a majority silently consents). Clearly, the Class supports this settlement.

### 3) The Stage of Proceedings and the Amount of Discovery Completed

The third *Girsh* factor is intended to ensure that "the parties have an adequate appreciation of the merits of the case before negotiations." *In re Prudential*, 148 F.3d at 319. In *In re Prudential*, for example, the court noted that the parties had filed and argued motions, including discovery motions and the defendant's motion to dismiss under Rule 12(b)(6). *Id*. Here, the parties not only conducted formal and informal discovery, but also briefed and argued Sanofi's motions to dismiss under Rule 12(b)(6) before reaching a settlement. *See e.g.,*Slater Cert. at ¶¶ 4-10. Discovery included Sanofi's production and Plaintiffs' careful review of numerous documents and data. *Id*. Plaintiffs also independently obtained voluminous documents and conducted interviews of various Class Members. *Id*.. Based on the information obtained in discovery and through their independent investigation, Plaintiffs were able to confidently engage in the mediation process. *Id*. Only after several months, an in-person mediation and many more discussions did the parties reach an agreement as to the terms of the settlement. *Id*. Clearly Plaintiffs have met the third *Girsh* factor in that they had "an adequate appreciation of the merits of the case" before arriving at a settlement.

### 4) Risks of Establishing Liability

The fourth *Girsh* factor requires the Court to consider the risks of the Plaintiffs to establishing liability. "By evaluating the risks of establishing liability, the District Court can examine what the potential rewards (or downside) of litigation might have been when class counsel elected to litigate the claims rather than settle them." *In re Gen. Motors*, 55 F.3d at 814.

"The risks surrounding a trial on the merits are always considerable . . . the risks … are more pronounced where, like here, no personal injury or death is present."  *Weiss*, 899 F. Supp. at 1301-02.  "Thus, one must evaluate the potential risks and rewards of litigation had Class Counsel decided to litigate the claims rather than to accept the settlement offers."  *In re Elec. Carbon Prods.*, 447 F. Supp. 2d at 400 (citing *In re Cendant Corp.*, 264 F.3d at 237; *In re Gen. Motors*, 55 F.3d at 814).

Here, Sanofi continues to claim that numerous legal deficiencies and affirmative defenses bar the claims asserted.  Even assuming a class was certified for trial, Plaintiffs would likely have had to overcome motions for summary judgment and expert witness challenges, and then prevailed at trial as well as on any appeal.  The risks were compounded by the fact that Sanofi is represented by experienced counsel, backed by one of the largest pharmaceutical companies in the world with substantial resources.  Slater Cert. at ¶ 9.  Although Plaintiffs were confident that they could prove their claims, there obviously was a significant risk in seeking class certification and proceeding to trial.  Clearly, the "risks of establishing liability" weigh in favor of approving the settlement.

### 5)   Risks of Establishing Damages

The fifth factor requires an analysis of the risk of establishing damages, which obviously includes all risks of establishing liability.  *See, gen., Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 213 (E.D. Pa. 2011) ("The risks of establishing damages are closely tied to the risks of establishing liability …").  Foremost,, one of sanofi's defenses is that the Incentive Compensation Plan specifically permitted Sanofi to reduce incentive compensation payments based on certain factors, and that their conduct was in full compliance with the Plan.  While Plaintiffs disagree, the Court (or the jury) could certainly have interpreted the language and

15

found that Sanofi was permitted to unilaterally reduce incentive compensation and therefore the Class might not have been able to establish any damages. Furthermore, even if a judgment were obtained against Sanofi at trial, an appeal could be filed and it could be years before the class received any recovery.  Thus, there was a risk in Plaintiffs establishing that the Class suffered damages as a result of Sanofi's actions.

**6)    Risks of Maintaining Class Action Status Through Trial**

Because the prospects for maintaining certification have a great impact on the range of recovery one can expect to reap from the class action, *In re Gen. Motors*, 55 F.3d at 817, the Court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial.  *Girsh,* 521 F.2d at 157.  Here, Plaintiffs faced a risk that this nationwide class might not have maintained certification throughout trial. Although plaintiffs believed they would have been able to obtain class certification, such a result was not certain and the risk of not having the class certified, or certified only for certain claims, was significant.  Slater Cert. at ¶ 9.

**7)    Ability to Withstand a Greater Judgment**

Sanofi is able to withstand a judgment greater than the settlement relief and this is a non-factor.

**8)    The Range of Reasonableness of the Settlement Fund
         in Light of the Best Possible Recovery**

The settlement fund is clearly within the range of reasonableness in light of the best possible recovery.  *See Careccio v. BMW of N. Am., LLC*, 2010 WL 1752347, *6 (D.N.J. 2010) ("full compensation is not a prerequisite for a fair settlement"); *see also In re Corel Corp. Sec. Litig.*, 293 F. Supp. 2d 484, 489–90 (E.D. Pa. 2003) (settlement for 15% of "best possible recovery" was reasonable).  The settlement here goes a long way toward providing the "best

16

possible recovery." The Settlement Amount represents a recovery to the Class of approximately 57% of the total alleged improper reductions to their incentive compensation.  Slater Cert. at ¶ 20.  Considering the settlement "in light of the best possible recovery" clearly weighs in favor of the settlement.

> ### 9)     The Range of Reasonableness of the Settlement Fund
> ###          in Light of the Attendant Risks of Litigation

The proposed settlement provides benefits which directly address the factual and legal allegations in question without the considerable risks and delays of continued litigation, trial and appeal.  Slater Cert. at ¶¶ 9-10.  The settlement is clearly within "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *In re Prudential,* 148 F.3d at 322.  As set forth above, the settlement allows the class to recover more than half of the total relief sought.  In fact, the average payout to Class Members is over $14,000, with some class members receiving over $30,000.  Slater Cert. at ¶ 20.  This relief constitutes a very successful outcome of the case, providing Class Members with a large portion of the overall relief sought.  Class Counsel believe that the settlement represents the best result that could be achieved for the proposed class without a trial, and that the advantages of settling the case on the proposed terms significantly outweigh the risks of proceeding to trial.  *Id*. at ¶ 20.  This factor weighs heavily in favor of approving the settlement.

## C.     The *Prudential* Factors

In *In re Prudential*, the Third Circuit held that a court may consider other factors in assessing the reasonableness of a class settlement, including:  1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, 2) the existence of other claimants, 3) whether Class Members have the right to opt out, 4) the reasonableness of the attorneys' fees, and 5) whether the procedure for processing individual claims is fair and

reasonable.  148 F.3d at 323.  Each *Prudential* factor that applies to this case also supports approval of the settlement.

The first *Prudential* factor measures whether the litigation had reached sufficient level of "maturity," such that counsel could reasonably "assess the probable outcome of a trial on the merits of liability and individual damages."  *In re Elec. Carbon Prods.,* 447 F. Supp. 2d at 398-99. Here, the parties not only conducted formal and informal discovery, but also briefed and argued Sanofi's motions to dismiss under Rule 12(b)(6) before reaching a settlement. Slater Cert. at ¶¶ 4-7.  Plaintiffs also conducted their own independent investigation including the collection and review of voluminous documents and interviews with Class Members and witnesses.  Based on the information obtained in discovery and through their investigation, Plaintiffs were able to confidently engage in the mediation process.  *Id*. at ¶ 8.  Only after several months, countless discussions and a full-day mediation session with Judge Welsh did the parties reach an agreement as to the terms of the settlement. *Id*. at ¶ 10.

The second *Prudential* factor does not apply, as there are no other known claimants.

The third *Prudential* factor is satisfied because Class Members have the right to opt out.

The fourth *Prudential* factor – reasonableness of fees – is satisfied.  As set forth in detail in plaintiffs' brief in support of their application for attorneys' fees of $643,182.28 (and costs of $6,817.72), the fees sought are reasonable for this litigation, the lawyers involved and the result achieved.  In fact, Sanofi agreed not to object to a request of $800,000 for attorneys' fees and costs, but despite this agreement, Class Counsel has limited their request to $650,000. Moreover, attorneys' fees were not discussed until <u>after</u> the parties agreed to the terms of the settlement. *Id*. at ¶ 14.

The fifth *Prudential* factor, "whether the procedure for processing individual claims

under the settlement is fair and reasonable," is clearly satisfied.  As set forth below in Point III, the Notice Plan gave every Class Member access to abundant information to understand what this case is about, how to opt out of the class and how to object.    Additionally, every Class Member will receive the exact same percentage of their alleged improper reduction of incentive compensation.  Most significantly, Plaintiffs successfully negotiated a settlement that results in the direct distribution of the settlement proceeds to Class Members without the need to submit a claim.  The process provides for a fair and reasonable resolution, while also maximizing class participation.

In sum, each of the applicable *Prudential* factors weigh heavily in favor of approval of the settlement.

## POINT III

### TRANSMISSION OF THE NOTICE OF SETTLEMENT TO THE CLASS SATISFIED BOTH THE COURT'S PRELIMINARY ORDER AND APPLICABLE LAW

Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Such notice to class members "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *In re Prudential*, 962 F. Supp. at 527-28.

Here, the Notice Plan and claims process meets or exceeds the requirements of Rule 23 and all due process requirements. The Notice Plan provided for the direct mailing of a full notice to all Class Members.  Slater Cert. at ¶ 21.  Angeion Group has administered the proposed Notice Plan.  *Id.*.  Angeion Group was selected based on its experience, technical capabilities, pricing, capacity and experience in prior cases.  *Id.* at ¶ 21.    As reflected in the

affidavit submitted by Brian S. Devery in connection with final approval, Angeion Group has carried out the Court's orders regarding notice and administration of the settlement. *Id.* The Notice Plan gave every Class Member access to information sufficient to understand what this case is about, how to calculate what they would receive under the settlement, how to opt out of the class and how to object. *Id.*

The Class Notice was mailed to one hundred and twenty five Class Members.[2] *Id.* at ¶ 21. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In the present case, the notice program reached 100% of the Class. *Id.* at ¶¶ 21-22. By all objective criteria, this was an extraordinarily successful notice program that meets – and greatly exceeds – all Due Process concerns. *DeJulius v. New Eng. Health Care Emples. Pension Fund*, 429 F.3d 935 (10th Cir. 2005) (holding notice satisfied due process where significant majority of class members (over 70.7%) received notice prior to the final fairness hearing); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001) (holding Rule 23 and Due Process requisites satisfied where the record indicated that only seventy-seven percent of class members actually received notice of the settlement). The Notice Plan and claims process meet all legal requirements.

---

[2] Class Counsel personally provided notice directly to the one-hundred and twenty sixth class member. Slater Cert. at ¶¶ 18-19.

## POINT IV

## THE INCENTIVE AWARDS SHOULD BE APPROVED

There is ample authority in this and other circuits for the approval of awards for named plaintiffs to reimburse them for their time, effort and contributions to the litigation. *See Varacallo*, 226 F.R.D. at 257-58 (collecting cases). The purpose of such an award is, "to compensate the named Plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Id*. at 257 (citations omitted). As to all of the class representatives herein, it can be said:

> The Class Representatives performed considerable work advancing the litigation. Like the attorneys in this case, the class representatives have conferred benefits on all other class members and they deserve to be compensated accordingly.

*Id.* at 258-259 (citation omitted); s*ee also DeSantis v. Snap-on Tools Co.*, No. Civ. A. 06CV2231 (DMC), 2006 WL 3068584, at *11 (D.N.J. Oct. 27, 2006) (approving $50,000 incentive awards).

The settlement calls for Sanofi to pay Plaintiffs Lisa Overton, Merribeth Bazzell and Karen Fuller an amount to be approved by the Court, not to exceed $75,000 ($25,000 each) as an incentive payment for the time and effort expended in connection with the litigation. Settlement Agreement at Section III(H). All of the Plaintiffs shall also be entitled to their respective portions of the settlement proceeds. *Id*. Plaintiffs are requesting that the Court award $25,000 to each of the named Plaintiffs as they all expended significant time and effort assisting Class Counsel in their investigation, understanding of the operative Plan and related facts and issues, review of pleadings, answering interrogatories, producing documents in response to requests for production, participating in settlement discussions and assisting in the preliminary and final approval process. *See* Certifications of Lisa Overton, Merribeth Bazzell and Karen Fuller. Perhaps most significantly, the Plaintiffs took substantial risk, as they agreed to pursue this

action on behalf of the Class despite the fact that their involvement in this case could negatively affect their future employment and/or standing in the industry.   *Id*.

The requested incentive awards of $25,000 to each of the Plaintiffs are appropriate, reasonable and should be approved.

## POINT V

## THE REQUESTED ATTORNEYS' FEES AND COSTS SHOULD BE APPROVED

Class Counsel will not repeat the arguments made in support of the motion for an award of attorneys' fees and costs and instead rely on their previous submissions.  *See* ECF No. 50. However, it should be noted that Class Counsel has expended additional time since that motion was filed, including oversight of the settlement administration, and the time to prepare this motion for final approval and will continue to spend time up to and after the final fairness hearing.   The requested attorneys' fees and costs are eminently reasonable and should be approved.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant final approval of the Settlement Agreement and the Settlement Class.

Respectfully submitted,

MAZIE SLATER KATZ & FREEMAN, LLC
Attorneys for Plaintiffs


By:____/s/ Adam M. Slater_____
        ADAM M. SLATER

Dated:  February 1, 2016